# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VALENTINE MILLS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-1637** |
| **UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY LOCAL UNION NO. 60, et al.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Before the Court is Defendant United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Local Union Number 60's ("Defendant") Motion to Dismiss or, in the Alternative, for Summary Judgment,[1] which seeks to dismiss Plaintiff Valentine Mills's ("Plaintiff") claims on the basis that they are preempted and time-barred.  Having considered the motion, the response, the reply, the record, and the applicable law, for the following reasons, the Court will grant the Motion to Dismiss.

## I. Background

### A.  Factual Background

According to Plaintiff's Petition for Damages, filed in the Twenty Fourth Judicial District Court, State of Louisiana, and later removed to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1331, on or about April 26, 2010, while in the course and scope of his employment for Day and Zimmerman, NPS, Inc., Plaintiff "approached Tommy Perque (supervisor for Day and Zimmerman, NPS, Inc.) to inform him that he was having pain in his right arm and wanted to see

---

[1] Rec. Doc. 7.

a doctor."[2] Plaintiff alleges that Tommy Perque ("Perque") instructed Plaintiff to report his injury to the employer's "safety man."[3] Plaintiff maintains that he "complied and reported to the safety man that his right arm was hurting, that he wanted to see a doctor, and that he had hurt his right arm a few weeks earlier while mixing grout and that he reported the March 23, 2010 injury to his supervisor Gregory Chisolm."[4]

Plaintiff alleges that on April 6, 2010 he "contacted Gregory Chisolm about his previous injury and report since the safety man inquired about the prior injury. Later that day, [Plaintiff] learned that Gregory Chisolm never prepared a report concerning the March 23, 2010 accident," and that "Gregory Chisolm prepared an April 6, 2010 report denying that [Plaintiff] reported an injury to him on March 23, 2010... [and] implied [Plaintiff] could not have been mixing grout."[5] Following this report, Plaintiff alleges that he was terminated from Day and Zimmerman, NPS, Inc. for "failing to comply with company policy, which requires that an injury be immediately reported to a company representative and that the company representative immediately prepare a report of the incident and injuries."[6]

Plaintiff alleges "as a consequence of the misrepresentations in the April 6, 2010 report" his employment was terminated and that the "misrepresentations by Gregory Chisolm were intentional and caused him to suffer significant economic injury and loss."[7] Plaintiff further claims that on or

---

[2] Rec. Doc. 1-1 at p. 2.

[3] *Id.*

[4] *Id.* at p. 3.

[5] *Id.*

[6] *Id.*

[7] *Id.*

about July 21, 2010, Adam E. Kethchens, who was a witness to the March 23, 2010 incident, executed an affidavit affirming that "[Plaintiff] was actually mixing grout concrete on March 23, 2010; (2) [Plaintiff] informed them (co-workers) that he hurt his right shoulder while mixing concrete grout; and (3) that he overheard [Plaintiff] tell Gregory Chisolm that he hurt his right shoulder while mixing concrete grout."[8] Plaintiff further alleges that on or about June 1, 2010, another witness, Frederick Johnson, "prepared a statement indicating he also witnessed [Plaintiff's] mixing of cement grout and that [Plaintiff] began complaining about his right arm hurting and eventually reported the injury to Gregory Chisolm."[9]

In his Petition for Damages, Plaintiff asserts that "as a consequence of misrepresentations that caused [Plaintiff] to lose his job with Day and Zimmerman, NPS, Inc., [Plaintiff] sought the intervention and assistance of his business agent with the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Local Number 60, State of Louisiana."[10] According to Plaintiff, "instead of properly investigating the April 6, 2012 [incident] as [Plaintiff's] representative, the business agent simply summarized the facts that were reported and requested a copy of Day and Zimmerman's company policy that states if an employee does not report an accident that he or she is automatically terminated."[11] Plaintiff alleges that "as his business agent, the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Local Union Number 60 had a fiduciary duty to fully represent his interests and investigate the

---

[8] *Id.* at p. 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

incidents reported by him and other member witnesses who wanted appropriate and corrective action taken," and therefore Defendant "failed to adhere to the standard of care and duty required of union business agents, and other agents and representatives of principals and/or union members."[12]

Plaintiff avers that "as a consequence of [Plaintiff's] business agent's failure to fully and properly investigate the March 23, 2010 and April 6, 2010 incident (sic), including the business agent's failure to speak with witnesses who reported a different version of events, he was not successful in clearing his name or record and has not been able to secure employment within the industry."[13] Plaintiff has now brought suit against the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry Local Number 60, State of Louisiana and Gregory Chisolm for their "intentional misrepresentations and/or failure to adhere to the standard of care required of business agents."[14] On February 1, 2012, Chisolm was dismissed as a defendant in this case without prejudice, pursuant to Federal Rule of Civil Procedure 4(m).[15]

**B. Procedural Background**

On April 6, 2011, Plaintiff filed a Petition for Damages in the Twenty Fourth Judicial District Court, State of Louisiana[16] On July 12, 2011, Defendant removed this action to the Eastern District of Louisiana.[17] This case was initially assigned to Judge Lance M. Africk, Section "I." On August

---

[12] *Id.* at pp. 4-5.

[13] *Id.* at p. 5.

[14] *Id.*

[15] Rec. Doc. 16.

[16] Rec. Doc. 1-1 at p. 2.

[17] Rec. Doc. 1.

16, 2011, Defendant filed the pending motion.[18] Plaintiff filed a response on September 12, 2011.[19] Defendant filed a reply on September 23, 2011.[20] On October 11, 2011, this case was transferred to this Section, Section "G."[21]

## II. Legal Standards

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[22] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[23] "Factual allegations must be enough to raise a right to relief above the speculative level,"[24] and a claim is facially plausible when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[25]

When deciding a motion to dismiss, the district court will liberally construe all asserted

---

[18] Rec. Doc. 7.

[19] Rec. Doc. 9.

[20] Rec. Doc. 12.

[21] Rec. Doc. 13.

[22] Fed. R. Civ. P. 12(b)(6).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[24] *Twombly*, 550 U.S. at 556.

[25] *Id.* at 570.

claims in favor of the nonmovant, and all facts pleaded are taken as true.[26] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[27] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[28]

In considering a motion to dismiss for failure to state a claim, the district court typically must limit itself to the contents of pleadings, including any attachments.[29] If the court looks beyond the pleadings and any attachments thereto, the Federal Rules of Civil Procedure generally require the court to "treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56."[30] However, there does exist a narrow exception to this rule: a court may consider, without converting the motion to one for summary judgment, documents referred to in the pleadings if the documents are central to the plaintiff's claim.[31]

---

[26] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007).

[27] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[28] *Moore v. Metropolitan Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir. 2007)).

[29] *See* Fed R. Civ. P. 12(b); *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985); *Neville v. Am. Rep. Ins. Co.*, 912 F.2d 813, 814 n. 1 (5th Cir. 1990); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004).

[30] *Carter v. Stanton*, 405 U.S. 669, 671 (1972).

[31] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (finding that the district court properly considered documents not attached to the complaint).

### III. Parties' Arguments

In support of its motion to dismiss, Defendant argues that Plaintiff's alleged state law causes of action for "breach of duty as his bargaining agent" are preempted by Section 301 of the Labor Management Relations Act ("LMRA")[32] and must therefore be dismissed.[33] Defendant asserts that Congress's intent in passing the LMRA was to allow federal courts to fashion a uniform body of law to construe collective bargaining agreements and that therefore "incompatible doctrines of state law must give way to federal labor law."[34] Specifically, in *Lingle v. Norge Division of Magic Chef, Inc.*,[35] the Supreme Court stated that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law ... is preemted and federal labor law principles apply."[36] In this case, Defendant argues that the resolution of Plaintiff's state law claims depend upon the interpretation of the CBA, and therefore, Plaintiff's claims would have to be construed under federal law, resulting in dismissal because Plaintiff's claims are time-barred under the six-month statute of limitations imposed on such claims.

Defendant maintains that Plaintiff's state law claim is "inextricably intertwined" with the interpretation of the collective bargaining agreement ("CBA").[37] Specifically, Defendant argues that in order to resolve Plaintiff's claims, this Court would have to examine the CBA to determine if

---

[32] 29 U.S.C. § 185(a).

[33] Rec. Doc. 7-6 at p. 6.

[34] *Id.* (citing *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 102-03 (1962) and *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957)).

[35] 486 U.S. 339, 405-06 (1988).

[36] *Id.*

[37] Rec. Doc. 7-6 at p. 8.

"Plaintiff was terminated without just cause under the applicable collective bargaining agreement" and "whether [Defendant] beached its duty of fair representation to Plaintiff."[38] While Plaintiff argues that the relationship created by the CBA gives rise to duties under state law, Defendant asserts that federal law specifically preempts Plaintiff's cause of action arising under state law.[39] Defendant quotes the Fifth Circuit in *Richardson v. United Steelworkers of America*,[40] wherein the court stated, "because the plaintiffs claims in this case alleged the Union breached a duty that arose from its status as their collective bargaining agent... this duty [must] be defined by federal law."[41] Therefore, Defendant maintains that Plaintiff has alleged a Section 301 claim, not a state law claim, which is now time-barred.[42]

Defendant argues that Section 301(a) of the LMRA "preempts causes of action arising out of contract or tort and provides the sole requisite jurisdiction and remedies for individuals covered by a collective bargaining agreement."[43] According to Defendant, because this action is against parties to a collective bargaining agreement and involves an alleged tort, Plaintiff's state law cause of action is preempted by the LMRA and federal law principles must apply.[44]

Considering Defendant argues that Plaintiff's claims must be interpreted under federal law and not state law, Defendant asserts that Plaintiff's claims are time-barred, because the National

---

[38] *Id.*

[39] *Id.* at p. 9 (quoting *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162 (5th Cir. 1989)).

[40] 864 F.2d at 1167.

[41] *Id.*

[42] Rec. Doc. 7-6 at p. 9.

[43] *Id.* (citing *Thomas v. LTV Corp.*, 39 F.3d 611 (5th Cir. 1994)).

[44] *Id.* (citing *Reed v. United Transp. Union*, 488 U.S., 328 (1983)).

Labor Relations Act[45] allows a party six months to file suit for such claims and that time begins to run when "an affected bargaining unit employee knew or in the exercise of reasonable diligence should have known of the alleged breach of duty."[46] Defendants charge Plaintiff with notice on May 28, 2010 when Defendant refused to pursue his grievance claim.[47]

In opposition, Plaintiff argues that his claims for "intentional misrepresentation by a fellow union member" and "claim for breach of fiduciary duty owed to union members by the union's President (Ricky Fabra), are made pursuant to the union's constitution and bylaws and not the collective bargaining agreement" and are "not dependant upon an analysis of the terms and conditions contained in a separate collective bargaining agreement."[48] In support of this position that his state law claims may proceed, Plaintiff cites *Allis-Chalmers Corp. v. Lueck*,[49] where the Supreme Court stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of federal labor law."[50] It is only when a claim is "substantially dependent upon analysis of the terms of an

---

[45] 29 U.S.C. § 160(b).

[46] Rec. Doc. 7-6 at 10-11 (citing *Landry v. Airline Pilots Assoc. Int'l Union, AFL-CIO,* 901 F.2d 404 (5th Cir. 1990)).

[47] *Id.* at p. 11. While not addressed in Plaintiff's Petition for Damages (Rec. Doc. 1-1) or opposition to the motion to dismiss, Defendant claims that while Plaintiff initially sought Defendant's assistance with his grievance, Plaintiff later "informed [Ricky Fabra, President of the Union] that he did not wish for [Defendant] to pursue the grievance." Rec. Doc. 7-6 at p. 2. According to Defendant, on May 28, 2010, Plaintiff asked Defendant to grieve his termination, but Fabra refused because now his "grievance would be untimely." *Id.* at p. 3. Plaintiff does not dispute this factual basis or allege a different set of facts in the Petition for Damages or opposition to the pending motion.

[48] Rec. Doc. 9 at p. 1

[49] 471 U.S. 202, 211 (1985).

[50] *Id.*

agreement made between the parties" that a state law claim is preempted.[51]

        Plaintiff argues that his claims arise out of "intentional misrepresentation by the union representative" and a breach of fiduciary duty by another, and that the resolution of these issues is not substantially dependant on the terms of the CBA.[52] Plaintiff cites Louisiana Civil Code Article 1953 to support his claim that he must "prove suppression of the truth with the intention to either obtain an unjust advantage or to cause a loss or inconvenience to the other," and that this will not require any interpretation of the CBA.[53] In response to Defendant's claim that its actions are time-barred, Plaintiff responds by asserting that his claims are subject to a one-year prescriptive period because his claim is made under Louisiana law.[54]

        In reply, Defendant rejects the notion that Plaintiff can avoid preemption of his state law claims by claiming that the fiduciary duty is governed by the Union's constitution and bylaws instead of the CBA.[55] Furthermore, Defendant claims that the Supreme Court has "compared a claim of breach of fiduciary duty to a claim of the duty of fair representation," and that a duty of fair representation arises out of the CBA.[56] In further support of its contention that Plaintiff's state law claims are preempted, Defendant draws this Court's attention to a case from the Northern District of Texas[57] where the court held that state law claims for breach of fiduciary duty and breach of

---

[51] Rec. Doc. 9 at p. 6 (quoting *Allis-Chalmers*, 471 U.S. at 220).

[52] *Id.*

[53] *Id.* at pp. 6-7.

[54] *Id.* at p. 10.

[55] Rec. Doc. 12 at p. 1 (quoting *Chauffeurs, Teamsters and Helpers, Local No. 381 v. Terry*, 494 U.S. 558, 563 (1990)).

[56] *Id.* (citing *Terry*, 494 U.S. at 567).

[57] *Lindsey v. ATU Int'l*, 2008 WL 243402, *3 (N.D. Tex. 2008).

contract were preempted by the federal duty of fair representation."[58] Defendant argues that if Plaintiff's state-law causes of action arise from the existence of the CBA, then those claims are preempted and must be construed as a claim arising under Section 301.[59] It is Defendant's position that all alleged duties would arise from the CBA, and are therefore subject to a six month statute of limitations, which has now expired.

## IV.  Law and Analysis

### A. Preemption of Plaintiff's State Law Claims

In *Allis-Chalmers Corp,*[60] the Supreme Court specifically stated that not all causes of action tangentially related to a collective bargaining agreement are preempted by Section 301.[61] However, the Court clarified this pronouncement by stating, "In extending the pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, *independent of a labor contract*."[62] In *United Steelworkers of America, AFL-CIO-CLC v. Rawson*,[63] the Supreme Court further explained its decision in *Allis-Chalmers*: "In *Allis-Chalmers Corp. v. Lueck,* we held that a state-law tort action against an employer may be pre-empted by § 301 if the duty to the employee of which the tort is a violation is created by a collective-bargaining agreement and without

---

[58] Rec. Doc. 12 at pp. 1-2.

[59] *Id.* at p. 2 (citing *Richardson*, 864 F.2d at 1167).

[60] 471 U.S. 202 (1985).

[61] *Id.* at 211.

[62] *Id.* at 212 (emphasis added).

[63] 495 U.S. 362 (1990).

11

existence independent of the agreement."[64] As such, the critical inquiry in the present case is whether Plaintiff's claims are independent of the CBA or whether they arise from the CBA.

In the complaint filed by Plaintiff, he alleges Defendant "failed to adhere to the standard of care and duty required of union agents, and other agents representatives of principles and/or union members" and that he seeks recovery for Defendant's "intentional misrepresentations and/or failure to adhere to a standard of care required by business agents."[65] Despite the fact that Plaintiff now argues that his claims do not require interpretation of the CBA, he skirts the issue of where Defendant's duty to him originates.[66]

In *Richardson v. United Steelworkers of America*,[67] the United States Supreme Court was quite clear that a union's duty to represent its members arises from a the union's role as bargaining agent, through a collective bargaining agreement, and is governed by the LMRA:

> Sections 8(b) and 9(a) of the Labor Management Relations Act, 29 U.S.C. §§ 158(b), 159(a), empower a union that represents a majority of the employees in an appropriate bargaining unit to act as the exclusive representation of all the employees in collective bargaining. Because the union acts as agent of all the employees, it owes each of them, whether or not a union member, the duty of fair representation.[68]

Allowing Plaintiff to proceed on his state law cause of action would undercut the purpose of the LMRA- to allow "federal courts to fashion a body of federal law for the enforcement of a collective bargaining agreement," because the scope of Defendant's duty to Plaintiff under the CBA

---

[64] *Id.* at 369.

[65] Rec. Doc. 1-1 at p. 5.

[66] *See* Rec. Doc. 9 at p. 8.

[67] 864 F.2d 1162 (1989).

[68] *Richardson*, 864 F.2d at 1165.

would be construed in relation to a state law cause of action.[69] In *Reece v. Houston Lighting & Power Co.*,[70] the Fifth Circuit held that plaintiff's state law claims against his employer for employment discrimination on the basis of race were preempted. Crucial to the court's analysis was that under the Texas Labor Code, plaintiff would have to show that he was treated dissimilarly than other employees.[71] Because this finding would turn on questions of "promotion, seniority, and assignment to training programs, all of which are provided for in the CBA," the court found that plaintiff's claims would require an interpretation of the CBA, and were thus preempted.[72]

Under Louisiana law, "[t]he essence of the fiduciary duty lies in the special relationship between the parties. The fiduciary's duty includes the ordinary duties owed under tort principles, as well as a legally imposed duty which requires the fiduciary to handle the matter as though it were his own affair."[73] To determine if Defendant breached a duty arising out of the CBA, this Court would undoubtably have to construe the limits of the duty and apply it to the law of Louisiana. Among Plaintiff's claims in the Petition for Damages, he alleges that Defendant did not "properly investigat[e] the April 6, 2010 [incident] as his representative."[74] Like in *Reece*, where the resolution of the discrimination claims would necessarily require an interpretation of the hiring and promotion protocols in the CBA, here, whether Defendant properly investigated Plaintiff's reported injury will turn on what procedure the CBA requires in such a scenario. In Exhibit A, Defendant provides the

---

[69] *Textile Workers Union of Am.*, 353 U.S. at 451.

[70] 79 F.3d 485 (5th Cir. 1996).

[71] *Id.* at 487

[72] *Id.*

[73] *Beckstrom v. Parnell*, 97-1200 (La. App. 1 Cir. 11/6/98); 730 So.2d 942, 947-48.

[74] Rec. Doc. 1-1 at p. 5.

CBA entitled "General Presidents' Project Maintenance Agreement."[75] Article VII of that agreement outlines the "Grievance Procedure," which Plaintiff claims was not adhered to by Defendant.[76] Plaintiff's cause of action is not independent of the CBA because the claims require an interpretation of the agreement, and therefore Plaintiff's claims are preempted under federal law.

**B.  Prescription**

As established above, Plaintiff's state law claims are preempted by the LMRA because their resolution would require an interpretation of the CBA. When "a state law claim is substantially dependant upon an analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."[77] If this Court were to construe Plaintiff's Petition for Damages as a claim pursuant to Section 301, dismissal would be mandated as Plaintiff's claims are now time-barred. In *DelCostello v. International Brotherhood of Teamsters,*[78] the Supreme Court recognized that a six-month prescriptive period applies to charges of unfair labor practices in connection with a breach of a union's duty regarding a collective bargaining agreement.[79] The limitations period begins when the plaintiff knew or should have known of the alleged breach of duty.[80] Defendant alleges that it gave notice to Plaintiff on May 28, 2010 that it would no longer pursue Plaintiff's grievance claim,[81]

---

[75] Rec. Doc. 7-2, Exhibit A.

[76] *Id.* at p. 10.

[77] *Allis-Chalmers*, 471 U.S. at 220.

[78] 462 U.S. 151 (1983).

[79] *Id.* at 168.

[80] *Landry*, 901 F.2d at 404.

[81] Rec. Doc. 7-6 at p. 11.

14

and Plaintiff does not dispute this anywhere in his Petition for Damages or opposition to the pending motion to dismiss. The six-month statute of limitations period expired before the filing of Plaintiff's Petition for Damages in state court on April 6, 2011 and, therefore, Plaintiff's claims are time-barred.

### IV. Conclusion

Considering Plaintiff's state law claims would require an interpretation of the CBA, they are preempted by the LMRA, and therefore the alleged state law claims may not survive. However, Plaintiff's claims could be construed as arising under Section 301of the LMRA. If these claims are construed as Section 301 claims, the applicable federal law requires this Court to apply a six-month statute of limitations period, which has now expired. Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment[82] is **GRANTED** and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this  30th day of September, 2012.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[82] Rec. Doc. 7.

15